IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW B. MOUW and MARY K. MOUW, ) ) ) Plaintiffs, ) ) v. ) ) ) SHELTER MUTUAL INSURANCE ) COMPANY, ) ) Defendant. ) | Case No. 22-CV-2306 Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Matthew B. Mouw and Mary K. Mouw (collectively, "plaintiffs") bring a three-count complaint against defendant Shelter Mutual Insurance Company, seeking, in relevant part, declaratory judgment compelling the parties to proceed with an appraisal (Count I).[1] On June 8, 2022, defendant moved the court to abstain from exercising its jurisdiction over this case due to arguably parallel pending declaratory judgment litigation filed by defendant in the Circuit Court of Cook County (Doc. 9), which this court granted on January 12, 2023. The court did not dismiss the complaint, but stayed the case until the state court ruled on defendant's then-pending appeal, in which defendant did not prevail on procedural grounds. On October 6, 2023, the parties filed a joint status report to inform the court that the Illinois Supreme Court denied defendant's petition for leave to appeal, ending the state action (Doc. 36). Defendant filed its answer and affirmative defenses on October 20, 2023 (Doc. 38), and plaintiffs moved for judgment on the pleadings on Count I on January 5, 2024 (Doc. 43). For the reasons discussed

---

[1] Count II alleges breach of contract, for failing to pay what plaintiffs believed they are owed for their claimed damages under the policy, and Count III seeks relief under section 155 of the Illinois Insurance Code, 215 ILCS 5/155.

1

below, the court grants plaintiffs' motion.

## BACKGROUND

Plaintiffs own a single-family residential dwelling ("the dwelling"), and defendant issued a homeowners insurance policy ("the Policy") to plaintiffs that provided coverage for "accidental direct physical loss" to the dwelling caused by or resulting from wind and hail. The dwelling was then damaged by wind and hail, and plaintiffs submitted a claim for damage to their dwelling under the Policy. Defendant found hail damage to roof vents, copper standing seams, skylights, valley flashings, and gutters. Defendant did not find damage to the roof itself, but it agreed that repairing the damaged metal components would require removing some amount of the roof's wood shakes.

On or about November 3, 2020, defendant issued an actual cash value payment to plaintiffs for its estimated cost to repair and replace the damage to the dwelling, minus pre-loss depreciation and plaintiffs' deductible. In response, plaintiffs retained a contractor, who issued a report on April 10, 2021, stating that the necessary repairs could not be completed pursuant to the scope of work and price reflected in defendant's estimate. After reviewing the contractor's estimate, defendant issued a supplemental estimate and payment to plaintiffs on July 7, 2021. Plaintiffs' contractor then issued an estimate for a full replacement of both the main roof and the detached garage.

On August 6, 2021, plaintiffs submitted a written demand for appraisal pursuant to the Policy's appraisal provision. The appraisal provision provides that:

> "If **you** and **we** fail to agree on the **market value, total restoration cost, actual cash value**, or amount of loss, as may be required in the applicable policy provision, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15

> days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.
>
> The appraisers shall then appraise the loss, stating separately the **market value, total restoration cost, actual cash value**, or loss to each item as may be required in the applicable policy provision.  If the appraisers submit a written report of an agreement to **us**, the amount agreed upon shall be the **market value, total restoration cost, actual cash value**, or amount of loss as may be required in the applicable policy provision.  If they cannot agree, they will submit their differences to the umpire.  A written award by two will determine the **market value, total restoration cost, actual cash value**, or amount of loss.  Each party will pay the appraiser it chooses, and equally pay expenses for the umpire and all other expenses of the appraisal unless the amount **you** demanded prior to the appraisal process is awarded by the appraisers pursuant to this provision.  In that event, the appraisers and umpire will be fully paid by **us**." [Emphasis in original].

On August 26, 2021, defendant denied plaintiffs' request for appraisal because it found that there was no "accidental direct physical loss" to the roof.  According to defendants, plaintiffs raise a coverage issue that is inappropriate for appraisal.

Plaintiffs then filed their complaint in this court on May 3, 2022, pursuant to this court's diversity jurisdiction.[2]  They seek declaratory judgment to compel defendant to proceed with the appraisal of their loss, and ask the court to stay the case pending the outcome of the appraisal.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed.  "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to

---

[2] Prior to plaintiffs' federal complaint, defendant filed a complaint against plaintiffs in the Circuit Court of Cook County, Illinois, seeking a declaration that plaintiffs' claimed damages were not covered under the Policy beyond what had already been paid by defendant.  Defendant argued that plaintiffs failed to meet their burden under the policy to show that their claimed damages were a direct physical loss of, or damage to, the property that resulted from a hail event that was not subject to policy exclusions.  Further, defendant claimed that the hail event did not trigger the policy's appraisal provision because plaintiffs' claimed damages did not stem from a covered loss.  However, the Illinois court granted plaintiffs' motion to dismiss defendant's complaint, with prejudice.  The court reasoned that defendant impermissibly sought declaratory relief because instead of bringing an "actual controversy" between the parties, defendant sought a declaration that it was not liable for its past conduct, which the court determined was inconsistent with the prospective nature of declaratory relief.  Defendant appealed this decision, but the Illinois Supreme Court ultimately denied defendant's petition for leave to appeal.

3

judgment as a matter of law." Unite Here Local 1 v. Hyatt Corp., 862 F.3d 588, 595 (7th Cir. 2017). In considering the motion, the court looks only to the pleadings, which "include the complaint, the answer, and any written instruments attached as exhibits." N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 452 (7th Cir. 1998). The court must consider the pleadings in the light most favorable to the non-moving party. See Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc., 983 F.3d 307, 313 (7th Cir. 2020).

## **DISCUSSION**

Because the instant case is a diversity suit brought in Illinois, the court applies Illinois substantive law. See Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co., 796 F.3d 717, 723 (7th Cir. 2015). In Illinois, courts treat appraisal clauses as "analogous to arbitration clauses," which are "valid and enforceable in a court of law." 70th Ct. Condo Ass'n v. Ohio Sec. Ins. Co., No. 16 CV 07723, 2016 WL 6582583 at *4 (N.D. Ill. Nov. 7, 2016) (citing Lundy v. Farmers Grp., Inc., 322 Ill.App.3d 214, 218–19 (2001)). Illinois courts compel appraisal only "when the language of the appraisal clause is clear and unambiguous, and when it is obvious that the disputed issue falls within the scope of the clause." 70th Ct. Condo Ass'n, 2016 WL 6582583 at *4 (citing Travis v. Am. Mfrs. Mut. Ins. Co., 335 Ill.App.3d 1171, 1175–76 (2002)). Questions of law, however, fall outside of the appraisal process, which is "a relatively limited process" with the primary function of ascertaining the value of property or the amount of loss. FTI Intern., Inc. v. Cincinnati Ins. Co., 339 Ill.App.3d 258, 261 (2003).

In the instant case, it is undisputed that the Policy covers hail damage to the dwelling, and the language of the appraisal clause clearly and unambiguously calls for appraisal if the parties "fail to agree on the actual cash value, amount of loss or repair cost." Instead, the central dispute is whether plaintiffs can request an appraisal here. According to defendant, the dispute presents

4

issues of coverage, which are not subject to appraisal. Plaintiffs disagree. According to plaintiffs, the dispute is not a coverage dispute; rather, plaintiffs argue that the instant case questions the "amount of loss," which includes determining: (1) what damage to their dwelling was caused by hail and wind; (2) the scope of the damage; (3) the scope of repairing or replacing the damage; and (4) the cost of repairing or replacing the damage.[3]

The instant case presents similar questions to those posed in Khaleel v. Amguard Ins. Co., No. 21 C 992, 2022 WL 425733, at *1 (N.D. Ill. Feb. 11, 2022), in which this court granted the plaintiffs' motion for judgment on the pleadings on similar facts. In Khaleel, this court rejected the defendant's contention that "it has not admitted coverage for the hail damage to the roof," despite acknowledging hail damage to "the soft metal vents on top of the roof." Id. at *2–3. The defendant argued that the dispute focused on whether the damage to the roof was caused by hail or by wear and tear (the latter was excluded from coverage). Id. at *2. This court noted that "[n]umerous courts within this district agree with plaintiffs and routinely reject the argument that issues implicating damage causation are not appropriate for resolution by appraisal." Id. (internal quotations omitted) (collecting cases).

Moreover, the court concluded that "[b]ecause [the] defendant ha[d] acknowledged that some portion of the dwelling was damaged by hail and constitute[d] a covered loss, [the suit was] not a coverage dispute but a dispute over the amount of loss," and compelled appraisal. Id. at *3. See also B&D Inv. Grp., LLC v. Mid-Century Ins. Co., No. 20-cv-03299, 2021 WL 6125853, at *3 (N.D. Ill. Dec. 28, 2021) ("Determining the cause and extent of damage to the Property is an inherent part of an appraisal to determine the amount of loss.").

---

[3] Plaintiffs initially argued that it is an appropriate question for appraisal whether the damage is extensive enough to require employing a general contractor, but in their reply, they state that "[i]n light of the policy's definition of Restoration Cost, Plaintiffs agree that the panel should not consider the issue of general contractor overhead and profit." Thus, the court does not compel appraisal on that dispute.

5

In addition, an order compelling appraisal in this case would be consistent with case law from Illinois state courts and other federal courts since Khaleel. For example, plaintiff cites Shelter Mutual Insurance Co. v. Morrow, 2023 IL App (5th) 230249-U. In Morrow, like the instant case, the plaintiffs submitted a claim following a hail and windstorm, defendant completed an estimate, and the plaintiffs obtained their own estimate that indicated that "a complete tear-off and replacement of the residence roof and garage roof" would be necessary. Id. at ¶ 5. When defendant rejected the plaintiffs' estimate, the plaintiffs submitted a written demand for appraisal, and defendant filed a declaratory judgment action seeking to deny coverage. Id. at ¶¶ 6, 7.

When defendant (i.e., the insurer) moved for judgment on the pleadings, the circuit court denied the motion, and ordered the parties to proceed with the appraisal process. Id. at ¶ 8. The circuit court reasoned that the dispute was not "over scope of coverage," but rather was a dispute "over the extent of the claimed damage," or the amount of loss. Id. at ¶ 17. On appeal, the court explained that the "'[a]mount of loss' is not a term of art specifically defined in the Policy," and thus the "amount of loss" issue "clearly falls under the appraisal clause." Id. at ¶ 20. The court rejected the defendant's argument that the relevant dispute was "what constitutes an 'accidental direct physical loss,'" rather than "the amount of 'accidental direct physical loss.'" Id. at ¶ 21.

Defendant cites Spearman Indus. Inc. v. St. Paul Fire & Marine Ins. Co., 109 F. Supp. 2d 905 (N.D. Ill. 2000), to support its counterargument, but several courts in this district have determined that Spearman is an outlier.[4] See Wysoczan v. Cambridge Mut. Fire Ins. Co., No. 1:23-CV-00905, 2023 WL 5530535, at *4 (N.D. Ill. Aug. 28, 2023); Culvey v. Auto-Owners Ins.

---

[4] In Spearman, the court determined that the parties' dispute over whether damage was caused by hail or wear and tear amounted to a dispute about causation, not valuation, and thus, was not subject to appraisal. 109 F. Supp. 2d at 907.

Co., No. 22-CV-3495, 2023 WL 3074344, at *4 (N.D. Ill. Apr. 25, 2023); Runaway Bay Condo. Ass'n v. Philadelphia Indem. Ins. Companies, 262 F. Supp. 3d 599, 602 (N.D. Ill. 2017).  These courts have declined to follow Spearman because its "discussion of the issue is very brief and does not disclose the basis for its conclusion," Runaway Bay Condo Ass'n, 262 F. Supp. 3d at 602, and "ignores the basic function of appraisal."  Culvely, 2023 WL 3074344, at *4.  This court declines to follow Spearman for the same reasons.

      Last, the court addresses defendant's argument that if the court compels appraisal, the court should also require defendant's proposed appraisal protocol (which plaintiffs have rejected), or a similar one.  According to defendant, a protocol is helpful to reduce or eliminate the need for post-appraisal litigation over factual issues by identifying "the nature of the dispute for the appraisers and umpire."  Defendant argues that a protocol can allow the panel to "issue an award in a form that accounts for disputed issues of fact," including disputed policy exclusions.  The proposed protocol would include itemization of the appraisal award.

      Although the court agrees that an appraisal protocol would add clarity to the process, the court agrees with plaintiffs that defendant does not identify the source of the court's authority to enter this requested relief.  For example, defendant does not explain which (if any) Policy provisions require or support an itemized appraisal protocol.  Defendant cites a publication on appraisal protocols,[5] which states that "[i]t should be clear that where there are issues surrounding coverage, sub-limits, division of insurable interest, etc. a detailed protocol setting out the issues is mandatory," because "if a single award stating the 'amount of loss' results from the appraisal, the award will be of no practical guidance to the parties."  Further, the article states that "[t]he same may be true in cases where there are disputes regarding coverage on how a

---

[5] Clarifying disputes regarding valuation definitions or coverage, Cat Claims: Insurance Coverage for Natural and Man-Made Disasters § 16:10.

7

particular valuation is to be calculated." However, as discussed above, the instant case is not a coverage dispute, and the court agrees with plaintiffs that if defendant wanted to require itemization during appraisal, it could have included language to that effect in the Policy. The court will not rewrite the Policy to require an appraisal protocol when it initially could have been drafted that way. See Illinois Ins. Guar. Fund v. Nwidor, 2018 IL App (1st) 171378105, ¶ 34 ("There is a strong presumption against provisions that easily could have been included in the contract but were not."). Of course, the parties can agree to a protocol, and doing so may reduce post-appraisal litigation. Defendant is free to offer any information it deems appropriate to the panel, including the terms of the Policy, in connection with the appraisal.

## CONCLUSION

For the reasons set forth above, the court grants plaintiffs' motion for judgment on the pleadings on Count I (Doc. 43). The court orders that the parties proceed forthwith to conduct the appraisal to determine the "amount of loss" to the dwelling under the Policy. These proceedings are stayed pending completion of the appraisal process. The parties are directed to file a joint status report with the outcome of the appraisal within seven days of the resolution of the appraisal process.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: February 21, 2024**